UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

PROGRESSIVE SPECIALTY         ]
INSURANCE COMPANY,            ]
                             ]
        Plaintiff,           ]
                             ]
    vs.                      ]    7:06-CV-04830-LSC
                             ]
GENE PITTS d/b/a PITTS SONS'  ]
TOW, BILLY EARL GRACY, QUALITY ]
CARRIERS, INC., and CITY OF   ]
EUTAW, ALABAMA,              ]
                             ]
        Defendants.          ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Plaintiff Progressive Specialty Insurance

Company's ("Progressive") Motion for Summary Judgment, which was filed

on January 22, 2008.  (Doc. 26.)  Plaintiff Progressive filed suit against Gene

Pitts d/b/a Pitts Sons' Tow ("Pitts"), Billy Earl Gracy ("Gracy"), Quality

Carriers, Inc., and the City of Eutaw, Alabama on December 6, 2006, seeking

a declaratory judgment that it has no obligation to defend or indemnify Pitts

or Gracy in the underlying state court action.  In their amended answer,

Defendants Pitts and Gracy asserted a counterclaim against Progressive,

alleging that if it is determined that no coverage is owed under the policy, Progressive is liable to Pitts failure to procure coverage.  The issues[1] raised in Plaintiff's motion have been briefed by the parties and are now ripe for consideration.[2]  Upon full consideration of the legal arguments and evidence presented, Plaintiff's motion for summary judgment is due to be granted in part and denied in part.

II.    Facts.[3]

In March of 2003, Gene Pitts, owner of the towing company Gene Pitts

---

[1]Progressive has moved for summary judgment only on the issue of whether Progressive has an obligation to either defend or indemnify Pitts or Gracy with respect to any claims made by Quality Carriers and/or the City of Eutaw.  (Doc. 27.)  Progressive's motion does not address Defendants' counterclaim for failure to procure insurance coverage.

[2]Defendants Pitts and Gracy filed a response to Plaintiff's motion for summary judgment. (Doc. 29.)  Defendants the City of Eutaw and Quality Carriers adopt, as their own response, the memorandum brief filed by Defendants Pitts and Gracy.  (Docs. 30 & 31.) Therefore, for purposes of this Opinion, the Court will treat the memorandum brief filed by Pitts and Gracy as the response of all defendants, and will make reference to such document (Doc. 29).

[3]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Son's Towing Recovery,[4] sought quotes for his towing and wrecker business. Pitts contacted Austin Metcalf ("Metcalf"), an insurance producer for The Pinckard Agency in Troy, Alabama, seeking insurance for his tow trucks, which are used in his towing business.[5]   In December of 2003, Metcalf submitted an application to Progressive for full coverage of Pitts's tow trucks, a 1987 Freightliner and two 1999 Chevrolets.

In January of 2004, Progressive issued Pitts a Commercial Automobile Insurance Policy for the policy period of January 29, 2004 through July 29, 2004 (the "original policy").   Following the commencement of the original policy, the policy was renewed several times at six month intervals, and was

---

[4]This company is also referred to as Pitts Sons' Tow.  For purposes of this Opinion, these names will be used interchangeably.

[5]According to Metcalf, Pitts first requested a quote for five trucks; however, Pitts rejected this quote from KBK Insurance Group because the annual premium was too expensive.  (Metcalf Dep. at 8-9.)  Pitts claims that he never requested a quote for five trucks; rather, he only sought coverage for three tow trucks.  (Pitts Aff. at 2.)   After Pitts rejected the initial quote, Metcalf started working with several other companies, including Progressive, for quotes with a lower premium.  (Metcalf Dep. at 10.)  On December 22, 2003, Progressive sent a quote on three of Pitts's vehicles, the 1987 Freightliner and two 1999 Chevrolet trucks, which Pitts rejected because it was too expensive.  *Id.* at 11-13.  According to Pitts, he then told Metcalf to obtain a quote for full coverage on the two Chevrolets, but only liability coverage for the Freightliner. (Pitts Aff. at 2.) On January 22, 2004, Progressive sent a second quote, which did not include any coverage on the 1987 Freightliner, and Pitts accepted.  *Id.* at 14-15. Pitts claims that he believed the quote included liability coverage on the 1987 Freightliner. (Pitts Aff. at 3.)

in full force and effect for the period commencing January 29, 2006 and

ending July 29, 2006 (the "Policy").

The Policy contains a provision providing:

Insuring Agreement - Liability to Others
Subject to the Limits of Liability, if you pay the premium for
liability coverage, we will pay damages, OTHER THAN PUNITIVE
OR EXEMPLARY DAMAGES, for bodily injury, property damage,
and covered pollution cost or expense, for which an insured
becomes legally responsible because of an accident arising out of
the ownership, maintenance or use of an insured auto.

(Progressive Policy, Part I at 6; Doc. 28 at 32)(emphasis omitted).   For

purposes of the Policy, "insured auto" means:

a.      Any auto specifically described on the Declarations page,
        unless you have asked us to delete that auto from the
        policy.
b.      Any additional auto on the date you become the owner if:
        (i) you acquire the auto during the policy period shown on
        the Declarations Page;
        (ii) we insure all autos owned by you that are used in your
        business; and
        (iii) no other insurance policy provides coverage for that
        auto.
        We will provide coverage for an additional auto for a
        period of thirty (30) days after you become the owner of
        such additional auto.  We will not provide any coverage
        after this thirty (30) day period unless within this period
        you ask us to insure the additional auto.  If you add any
        coverage, increase your limits, or make any other changes
        to this policy during this thirty (30) day period, these

changes to your policy will not become effective until after you ask us to add the coverage, increase your limits, or make such changes.  We may charge premium for the additional auto from the date you acquire the auto.

With respect to PART I - LIABILITY TO OTHERS, if we provide coverage for an additionally acquired auto in accordance with this paragraph b., we will provide the same coverage for such additional auto as we provide for any auto on the Declarations Page.

. . .

c.    Any replacement auto on the date you become the owner if:

(i) you acquire the auto during the policy period shown on the Declarations page;

(ii) the auto that you acquire replaces one specifically described on the Declarations page due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that auto.

If we provide coverage for a replacement auto, we will provide the same coverage for the replacement auto as we provide for the replaced auto.  We will provide that coverage for a period of thirty (30) days after you become the owner of such replacement auto.  We will not provide any coverage after this thirty (30) day period unless within this period you ask us to insure the replacement auto.  If you add any coverage, increase, your limits or make any other changes to this policy during this thirty (30) day period, these changes to your policy will not become effective until after you ask us to add the coverage, increase your limits, or make such changes.  We may charge premium for the additional auto from the date you acquire the auto.

> If ownership of any insured auto is transferred, or such auto
> becomes permanently inoperable, this policy no longer applies
> to it.

(Progressive Policy at 5; Doc. 28 at 30)(emphasis omitted).  The Policy's

Declarations Page provides a schedule of the covered vehicles, including a

1999 Chevrolet 7H4 and a 1999 Chevrolet 6H4.  (Commercial Auto Insurance

Coverage Summary, Renewal Declarations Page; Doc. 28 at 16.)

On April 25, 2006, an accident occurred involving a vehicle owned by

Pitts, which was driven by Gracy, and vehicles belonging to Defendants

Quality Carriers and the City of Eutaw (the "accident").  Gracy was operating

the 1987 Freightliner[6] on Interstate 59 in Tuscaloosa, Alabama, and had a

2004 Ford truck, owned by the City of Eutaw, in tow.  The truck being towed

by Gracy collided with a 1989 Heil tanker, owned or operated by Quality

Carriers.

After the accident, Pitts received a letter dated May 9, 2006 from

Jason Young ("Young") with Progressive, stating that the 1987 Freightliner

was not specifically listed on the Policy and that Progressive's investigation

---

[6]On April 25, 2006, Pitts was the title owner of a 1987 Freightliner wrecker. Pitts
acquired title to the 1987 Freightliner truck in 1988.

of the accident was being handled under a reservation of rights.  This letter did not reference the driver, Gracy, nor was it sent to his attention.

On June 12, 2006, as a result of the damages arising out of the accident, Quality Carriers brought suit against Pitts and Gracy in the Circuit Court of Tuscaloosa County, seeking to recover in excess of $ 161,000 in damages.  Progressive furnished Pitts and Gracy a defense to the action by hiring an attorney to represent them.  The suit  in Tuscaloosa County Circuit Court has been stayed, pending the resolution of this case.[7]

After the state court lawsuit was filed, Thomas R. Jones, Jr. ("Jones"), Pitts's personal attorney, sent Young a letter dated June 19, 2006, asking for a decision on the coverage issue.  Young acknowledged receipt of Jones's letter on June 22, 2006, through a letter stating that the coverage was still under investigation.

In September or October of 2006, Murray Whitt and Alex Holtsford contacted Pitts, informing him that they were hired by Progressive to defend Pitts and Gracy in the state court lawsuit arising out of the accident.  Mr.

---

[7]On May 10, 2007, the Tuscaloosa Circuit Court entered an Order, which stayed the state court action.

Holtsford has appeared in the state court lawsuit, filed answers on behalf of Pitts and Gracy on October 4, 2006, and continues to represent them in the pending suit.

On December 6, 2006, Progressive filed this suit, seeking a declaratory judgment that they do not have an obligation to defend or indemnify Pitts or Gracy.  Between May 9, 2006 and December 18, 2006, Progressive did not contact Pitts or Gracy regarding the reservation of rights, even though Progressive hired attorneys to defend Pitts and Gracy in the state court action.  Pitts received a letter from Mandy Hansen with Progressive dated December 18, 2006, advising him that the declaratory judgment action had been filed and that the state court lawsuit was being defended under a reservation of rights; however, this letter was not sent to Gracy.

III.    Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party."  *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)).   "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

IV.   Discussion.[8]

    A.   Coverage under the Policy.

---

[8]When a federal court exercises jurisdiction based upon diversity of citizenship, the court is bound to apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Insurance contracts must be "construed to give effect to the intention of the parties.  If the terms are clear and unambiguous, there is no need for construction." *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman,* 188 So. 2d 268, 270 (Ala. 1966).  However, it is well settled in Alabama that when the terms of the insurance policy are ambiguous, the terms must be construed against the insurer and liberally in favor of the insured.  *See Billups v. Ala. Farm Bureau,* 352 So. 2d 1097, 1102 (Ala. 1977).  "A corollary to this rule is that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." *Johnson v. Allstate Ins. Co.,* 505 So. 2d 362, 365 (Ala. 1987).  While ambiguities "are to be interpreted in favor of the insured, the courts are not at liberty to rewrite policies to provide coverage not intended by the parties." *Newman v. St. Paul Fire & Marine Ins. Co.,* 456 So. 2d 40, 41-42 (Ala. 1984). Insurance companies, in the absence of statutory provisions to the contrary, "have the right to limit their liability and write policies with narrow coverage." *Id.*  Therefore, "[i]f there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the

parties." *Id.* (citations omitted).

Here, the Policy states that it will provide liability coverage for damages, "for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of an **insured auto**." (Progressive Policy, Part I at 6; Doc. 28 at 32.)  An "insured auto" is clearly defined by the Policy as an auto "specifically described on the Declarations Page," an additional auto acquired during the policy period, and a replacement auto acquired during the policy period.  (Progressive Policy at 5; Doc. 28 at 30.)(emphasis omitted).  The Policy's Declarations Page identifies a 1999 Chevrolet 7H4 and a 1999 Chevrolet 6H4 as the only two vehicles specifically described for purposes of the Policy.  (Commercial Auto Insurance Coverage Summary, Renewal Declarations Page; Doc. 28 at 16.) By unambiguous terms, the Policy did not cover the 1987 Freightliner that was involved in the accident, because it was not specifically described on the Declarations Page of the Policy.  In addition, the 1987 Freightliner was acquired by Pitts in 1988, not during the policy period running from January 29 to July 26, 2006; therefore, it does not qualify as either an additional auto or a replacement auto for purposes of the definition of an "insured

auto." Thus, based upon the plain language of the Policy, it is apparent that the Policy is unambiguous and the 1987 Freightliner is not an insured auto.[9] Since the accident occurring on April 25, 2006 did not arise out of the ownership, maintenance, or use of an insured auto, the Policy's liability coverage has not been triggered.   Therefore, the Court will focus on Defendants' contention that Progressive is precluded from raising the defense of non-coverage.

B.    Waiver / Estoppel / Enhanced Duty of Good Faith.

While the terms of the Policy clearly state that the 1987 Freightliner is not an "insured auto," Defendants claim that Progressive is obligated to defend and indemnify Pitts and Gracy in the underlying state court action because Progressive has waived the coverage issue, is estopped from denying its obligation to defend and indemnify, and has failed to meet its enhanced duty of good faith.

1.    Waiver / Estoppel.[10]

---

[9]None of the Defendants "can dispute the fact that the 1987 Freightliner owned by Mr. Pitts and driven by Mr. Gracy on April 25, 2006, is not a 'described vehicle' on the Declarations Page of the Progressive Policy."  (Doc. 29 at 8.)

[10]While the results of the doctrines of waiver and estoppel are generally the same, the doctrines are distinguishable. BIBB ALLEN, ALABAMA LIABILITY INSURANCE HANDBOOK § 4-7(a)

In Alabama, "the general rule is that an insurer is obligated to indemnify an insured if it undertakes to defend him without first reserving the right to deny coverage."[11] *Shelby Steel Fabricators, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 569 So. 2d 309, 310 (Ala. 1990)(citing *Campbell Piping*

_____

(2005). "Waiver is the intentional relinquishment of a known right." *Id.* "Estoppel is the abatement by operation of law of the insurer's original right because of the insured's prejudicial reliance on the insurer's action or inaction." *Id.*

[11]As a general rule under Alabama law, the doctrines of waiver and estoppel cannot create or enlarge the scope of coverage of an insurance contract. *See Mooradian v. Canal Ins. Co.*, 130 So. 2d 915, 920 (Ala. 1961). However, the Alabama Supreme Court has recognized exceptions to the general rule. *See* ALLEN, *supra* note 10 at § 4-7(e)("[T]he Alabama Supreme Court, while recognizing that coverage may not be extended by waiver or estoppel, has clearly recognized that an insurer may waive the right to assert a policy suspension or forfeiture provision or be estopped from relying on such provisions."). Under an exception to the rule, an insurer may be estopped from raising the defense of noncoverage when it assumes the defense of an action on behalf of its insured without reserving its rights but with knowledge of the facts that would take the claim outside coverage. *See id.* (citing *Providence Wash. Ins. Co. v. Stanley*, 403 F.2d 844 (5th Cir. 1968) (insurer estopped from asserting defense that property was unoccupied at the time of a fire); *Burnham Shoes, Inc. v. West Am. Ins. Co.*, 504 So. 2d 238 (Ala. 1987), *abrogated on other grounds by Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057 (Ala. 1999) (in advisory opinion to a federal district court, the Alabama Supreme Court indicated that, by undertaking to defend, the intentional acts exclusion may be waived); *Campbell Pipeway Contractors, Inc. v. Hess Pipeline Co.*, 342 So. 2d 766 (Ala. 1977) (insurer estopped from insisting on the contractual exclusion due to action in defense of case); *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482 (5th Cir. 1960)); *see also* RONALD G. DAVENPORT, ALABAMA AUTOMOBILE INSURANCE LAW 3d § 3:4 (2008) (while the Alabama Supreme Court has stated that "[t]he unvarying rule is that coverage under an insurance policy cannot be enlarged by waiver or estoppel, since such doctrine can only have a field of operation when the subject matter is within the terms of the contract;" it has also held that "if an insurer undertakes to defend an insured without notifying the insured that it is reserving its rights to contest coverage or withdraw from the defense, then it is estopped from contesting coverage or withdrawing from the defense").

*Contractors, Inc.*, 342 So. 2d at 770); *see also Burnham Shoes, Inc.*, 504 So.

2d at 242. According to the Alabama Supreme Court,

> When a liability insurer, by assuming the defense of an action leads one to believe liability to do so is not denied, it would be unfair to subsequently permit that insurer to deny coverage, when, without reservation and with knowledge, it assumes exclusive control of the defense of an action.

*Shelby Steel Fabricators, Inc.*, 569 So. 2d at 310 (citations omitted).  The

general rule is set out in 38 A.L.R. 2d 1148 § 3 as:

> [A] liability insurer which assumes and conducts the defense of an action brought against the insured with knowledge of facts taking the accident or injury outside the coverage of the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the defense of noncoverage.

R.D. Hursh, Annotation, *Liability Insurance: Insurer's Assumption of or*

*Continuation in Defense of Action Brought Against the Assured as Waiver or*

*Estoppel as Regards Defense of Noncoverage or Other Defense Existing at*

*Time of Accident*, 38 A.L.R. 2d 1148 § 3 (1954).

However, the "general rule is limited by the principle that the insurer

may avoid the operation of the rule by giving notice that the assumption of

the defense is not a waiver of its right to deny coverage."  *Shelby Steel*

*Fabricators, Inc.*, 569 So. 2d at 310-11; *see also Campbell Piping Contractors, Inc.*, 342 So. 2d at 771 ("A like number of jurisdictions also hold that the insurer need only give timely notice that its undertaking to defend does not constitute a waiver of any coverage question it might have. We can see no reason for a distinction to be made in this case."). This notice of the insurer's reservation of rights "must go not only to the named insured but to all possible insureds." BIBB ALLEN, ALABAMA LIABILITY INSURANCE HANDBOOK § 4-2(b) (2005)(noting that there is no Alabama law on the subject, but that the case of *Knox-Tenn Rental Co. v. Home Ins. Co.*, 2 F.3d 678 (6th Cir. 1993) is sound law on the issue).

Here, Defendants contend that Progressive is estopped from denying coverage or has waived its right to contest coverage. First, Defendants argue that Progressive is estopped from denying coverage because it failed to provide timely notice that its defense was afforded under a reservation of rights.[12]   Progressive, on the other hand, contends that the May 9 letter,

_____

[12]The insurance claim submitted by Pitts in regard to the accident loss contained sufficient facts to put Progressive on notice of any potential problem with coverage under the Policy, especially since Progressive responded to the reported claim by letter stating that there is a "potential coverage problem" based on the fact that the vehicle involved, the 1987 Freightliner, "is not a listed vehicle" on the Policy.  Since Progressive assumed the defense of Pitts and Gracy in the state court action, by providing them with

reserving its right to deny coverage, especially when coupled with the fact

that Pitts's personal attorney received a copy of the letter, and the

December 18 letter constituted sufficient notice that Progressive was

reserving its right to deny coverage.   The May 9, 2006 letter from Jason

Young, on behalf of Progressive, to Pitts stated, in part:

> There is a potential coverage problem regarding this loss.   Our
> records show that the vehicle involved in this loss is a 1987
> Freightliner Wrecker, VIN 1FUPYXYB6HH300315.   This vehicle *is
> not a listed vehicle* on the above captioned Progressive Specialty
> Insurance policy.
>
> We wish to advise at this time that handling of this claim is being
> conducted under a *reservation of rights.*
>
> The purpose of this letter then is to advise you that no action
> taken to date, nor any action this company might take in the
> future, to investigate, explore settlement, or *defend a lawsuit*
> arising out of the . . . claim, shall be deemed an admission of
> coverage under [the Policy] issued to Gene Pitts.   Progressive
> Specialty Insurance *expressly reserves all rights of denial under
> the policy* and in no way waives any of your rights.   The
> investigation of this matter has been, and is being, *conducted
> with full and complete reservation of all rights* afforded us
> under policy of insurance issued to Gene Pitts.

(Defendants' Evidentiary Submissions in Support of Response to Summ. J. Ex.

C; Doc. 29 at 34)(emphasis added).   This letter was addressed to Gene Pitts

---

counsel, with knowledge of the facts potentially taking the accident outside the
coverage of the Policy, it was incumbent upon Progressive to preserve its rights by giving
notice that its assumption of Pitts's and Gracy's defense was not a waiver of its right to
deny coverage or a duty to defend.

and made reference only to Pitts.  *See id.*  On June 19, 2006, Pitts's personal

attorney, Jones, sent a letter to Young, advising Young that he was in

possession of the May 9 letter, that he represents Pitts in this matter, and

that all further communications regarding the lawsuit arising out of the

accident should be made through him.  (Defendants' Evidentiary Submissions

in Support of Response to Summ. J. Ex. E; Doc. 29 at 39-40.)  In addition,

Jones inquired as to whether any conclusions had been made about the

coverage issue.  *See id.*  While Jones's letter stated that he represents Gene

Pitts and even directed a copy be sent to Pitts, it makes no reference to

Gracy.  *See id.*  In response to Jones's letter, Young replied by letter, dated

June 22, 2006, stating that he was the adjuster handling the claim and that

coverage for the loss was still under investigation.  (Defendants' Evidentiary

Submissions in Support of Response to Summ. J. Ex. F; Doc. 29 at 39-40.)  On

December 18, 2006, Mandy Hansen, a claims specialist with Progressive, sent

a letter to Pitts, which stated that:

> There is a coverage issue in regards to this loss as the 1987
> Freightliner owned by you *is not listed on the policy* issued to
> you by Progressive Specialty Insurance Company.  A declaratory
> judgment has been filed and is being handled by Sue Becerra.
> We are currently handling a defense of you under a *Reservation*

*of Rights* for a lawsuit filed against you by Quality Distribution.
. . .
This Reservation of Rights means that no action taken to date by
this company, or any of its representatives, nor any action this
company might take in the future to investigate this claim,
explore settlement, or defend any legal action arising out of . .
. the incident, should be deemed an admission of coverage. . .
. .   No waiver of any of the policy terms and conditions is
intended by said handling or actions, nor should such waiver or
estoppel be inferred.
. . .
We have hired Alex Holtsford, from Nix, Holtsford, Gilliland,
Higgins & Hitson to represent you under a Reservation of Rights
at this time.

(Defendants' Evidentiary Submissions in Support of Response to Summ. J. Ex.

D; Doc. 29 at 36)(emphasis added).  This letter was addressed to Pitts, and

referred to Gracy only in regard to the fact that Gracy was the driver of the

1987 Freightliner at the time of the accident.  *See id*.

Based on the evidence, it appears that Pitts received notice that

Progressive intended to investigate, explore a settlement, and defend a

lawsuit against Pitts pursuant to a reservation of rights through the May 9

letter, his attorney's receipt of the letter, and the December 18 letter.  *See*

*Shelby Steel Fabricators, Inc.*, 569 So. 2d at 311 (where Shelby Steel's

attorney received a letter stating that U.S.F. & G. would handle the matter

under a non-waiver agreement and Shelby Steel received a copy of the non-waiver form, the court held that Shelby Steel received sufficient notice even though it never executed the non-waiver agreement).  While Pitts testified that he understood the May 9 letter to mean that Progressive would investigate the claim and report back to him (Pitts Aff. at 4), it is clear that both Pitts and his personal attorney received a copy of the letter, providing that Progressive was expressly reserving its rights.  Based on the correspondence from Progressive to Pitts and his attorney, Pitts received sufficient notice of the reservation of rights.  Thus, since Progressive gave Pitts notice that it was reserving its right to deny coverage, Progressive is not estopped from denying a defense or coverage to Pitts.

With regard to Gracy,  Progressive furnished a defense to Gracy in the state court action by hiring Holtsford and Whitt to represent him, with Holtsford appearing in the state court action on Gracy's behalf.  Progressive had knowledge of the fact that Gracy was the driver of the 1987 Freightliner at the time of the accident since it had a copy of the Alabama Uniform Traffic Accident Report listing Gracy as the driver and a copy of the claim submitted by Pitts in which he advised Progressive that Gracy was the driver.

(Becerra Aff. at 2; Defendants' Evidentiary Submissions in Support of Response to Summ. J. Ex. D; Doc. 29 at 36.)   In addition,  Gracy is listed as a "rated driver" on the Declarations Page of the Policy.  (Commercial Auto Insurance Coverage Summary, Renewal Declarations Page; Doc. 28 at 16.)

The evidence indicates that Progressive did not send a reservation of rights letter to Gracy personally nor did it inform him that coverage may not be available under the Policy based on the fact that the 1987 Freightliner was not a listed vehicle.  Gracy testified that he has "not received any notice from Progressive that it had reserved any rights in regard to [his] defense or coverage for [him] for the accident that happened on April 25, 2006." (Gracy Aff. at 2.)   Also, both of the reservation of rights letters were addressed to and sent to Pitts; neither were sent or copied to Gracy.  None of the evidence suggests that Gracy was aware of the reservation of rights letter.  *See* BIBB ALLEN, ALABAMA LIABILITY INSURANCE HANDBOOK § 4-2(a) ("It is axiomatic that a letter denying coverage, or reserving rights to contest coverage at a later date, must go not only to the named insured but to all possible insureds."); *Knox-Tenn Rental Co.,* 2 F.3d at 682 (stating that no case law "indicates that an insurer who undertakes the defense of an insured

can reserve its rights, and thereby avoid estoppel, other than by taking action itself to notify the insured that its defense is under a reservation of its right to deny coverage[; an] insured's actual knowledge of the contents of the policy is irrelevant").

Progressive concedes that Gracy was not directly sent a reservation of rights letter; however, it contends that it is not estopped from denying coverage because Gracy had notice of the reservation of rights since his counsel was fully aware of the admitted lack of coverage and two reservation of rights letters were sent to Pitts.  While Progressive argues that Gracy had notice of the reservation of rights because counsel for both Pitts and Gracy was in possession of the May 9, 2006 letter, the letter from Mr. Jones acknowledging the May 9 letter states that Jones "represent[s] Mr. Gene Pitts" and that he is "Mr. Pitts' attorney in this matter."  (Defendants' Evidentiary Submissions in Support of Response to Summ. J. Ex. E; Doc. 29 at 39-40.)   The letter from Jones does not reference Gracy nor was it sent to Gracy.  Under Alabama law, "for knowledge of the attorney to be imputed to the client, the knowledge must have come to the attorney while engaged in a service for his client after the attorney-client relationship began."  *Ball*

*v. Vogtner*, 362 So. 2d 894, 898 (Ala. 1978). Since the letter from Jones does not indicate that he received notice of the reservation of rights while engaged in a service for Gracy to which the notice relates, the knowledge of Jones cannot be imputed to Gracy. In addition, with regard to the two reservation of rights letters sent to Pitts, this notice of the reservation of rights received by Pitts cannot be imputed to Gracy. While Progressive attempted to reserve its rights, neither the May 9 letter nor the December 18 letter providing for a reservation of rights was addressed to or sent to Gracy.[13] Under Alabama law, "[t]he knowledge of an agent may be imputed to the principal as a matter of law" *Williams v. Fundaburk*, 185 So. 383, 385 (Ala. 1938); however, "the agent is not deemed to have [notice of whatever the principal has notice of] when it is the agent who is sued" *Roland v. Cooper*, 768 So. 2d 400, 402 (Ala. Civ. App. 2000). *See also Knox-Tenn Rental Co.*, 2 F.3d at 682 ("Tennessee law imputes notice received by an

---

[13]The December 18, 2006 letter did state that Pitts advised Progressive "that on the date of loss, one of [Pitts's] employees, Billy Gracy, was operating a 1987 Freightliner. . . . Mr. Gracy claims to have been driving on I-59 in Tuscaloosa, AL. Mr. Gracy claims that an unknown vehicle cut him off causing him to swerve. When Mr. Gracy s[w]erved the vehicle he was towing, a 2004 Ford F-750, swung out and struck a 1989 Heil Tanker Truck." (Defendants' Evidentiary Submissions in Support of Response to Summ. J. Ex. D; Doc. 29 at 36.)

agent to a principal. There is, however, no support for Home's position that the reverse is true.  Thus, we cannot impute the notice received by Jenkins Insurance to Lowe merely because he was employed by the company.")(internal citations omitted).  Further, the December 18 letter from Progressive's claims specialist to Pitts stated that Progressive is "currently handling a defense of *you* under a Reservation of Rights." (Defendants' Evidentiary Submissions in Support of Response to Summ. J.t Ex. D; Doc. 29 at 36)(emphasis added).  This letter was addressed to Pitts and only references the defense of Pitts; therefore, it does not reserve Progressive's rights with respect to its defense of Gracy.  Thus, Progressive assumed the defense of Gracy with knowledge of the fact that Gracy was the driver of the Freightliner, which was not a listed vehicle on the Policy, and did not provide Gracy with sufficient, or any, notice of its reservation of rights. *See Home Ins. Co. v. Rice,* 585 So. 2d 859, 860-62 (Ala. 1991)(where The Home assumed the defense of Rice without notice, the court held that "[i]t would be unfair to allow The Home to deny a duty to provide Rice's defense 13 months after it had assumed that defense").

Progressive argues that it is not estopped from denying coverage

because Pitts and Gracy have not shown prejudice as a result of Progressive's

undertaking their defense in the state court action.  *See* 38 A.L.R. 2d § 5[a]

("if a liability insurer's defense of an action against the insured is to work an

estoppel, . . . it must be shown that prejudice resulted from the insurer's

conduct in defending the action"); *U.S. Fid. & Guar. Co. v. McKinnon,* 356

So. 2d 600, 606 (Ala. 1978)(under Alabama law, the doctrine of estoppel has

three elements: the actor, with knowledge of the true facts, communicates

something in a misleading way; the other relies upon the communication;

and the other would be prejudiced if the actor is allowed to assert a claim

inconsistent with his earlier conduct).  With regard to prejudice when an

insurer undertakes the defense of an insured, courts have held "either that

prejudice is inevitable effect of the insured's loss of the right to maintain

complete control of the defense, or . . . that in a situation in which it

appears that an insurer has assumed the defense of an action against the

insured, prejudice to the insured will be presumed."  *See* 38 A.L.R. 2d 1148

§§ 2 & 5[b] (citing *Campbell Piping Contractors, Inc.*, 342 So. 2d 766).[14]  In

---

[14]*See also Knox-Tenn Rental Co.*, 2 F.3d at 685.  In *Knox-Tenn Rental Co.*, the court
stated that general treatises show the presumption of prejudice:
> Where an insurer, without reservation and with actual or presumed
> knowledge, assumes the exclusive control of the defense of the claims

Alabama, proof of actual prejudice to the insured is not required before an

insurance company that failed to reserve its rights is estopped from denying

its duties owed to the insured; rather, prejudice to the insured will be

presumed.  *See Rice*, 585 So. 2d at 861 (stating that "neither Campbell [342

So. 2d 766 (Ala. 1977)], nor Burnham Shoes [504 So. 2d 238 (Ala. 1987)],

requires the insured to demonstrate actual prejudice in a duty-to-defend

action")(citing *Integrity Ins. Co. v. King Kutter, Inc.*, 866 F.2d 408 (11th Cir.

1989)("Neither Campbell Piping nor Burnham Shoes requires the putative

insured to demonstrate actual prejudice in a duty to defend action."))[15]

_____

against the insured, it cannot thereafter withdraw and deny liability under
the policy on the ground of noncoverage, prejudice to the insured by virtue
of the insurer's assumption of the defense being, in this situation,
conclusively presumed.

*Id.* (quoting 14 GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 51:85 (2d ed. 1982)).

[15]In *Integrity Ins. Co. v. King Kutter, Inc.*, the Eleventh Circuit certified the following
question to the Alabama Supreme Court:

Whether an insurer who: (1) undertakes the defense of a putative insured
in a lawsuit; (2) knows (or has constructive knowledge of information) that
its policy with the insured does not provide for coverage in the event the
insured is found liable; and (3) fails to reserve its right to withdraw its
defense, is estopped from denying a duty to indemnify the putative insured
in the absence of proof of actual prejudice to the insured caused by the
insurer's defense, or is prejudice to the putative insured's defense
presumed?

866 F.2d at 412.  This certified question was later withdrawn.  *See  Integrity Ins. Co. v.
King Kutter, Inc.*, 596 So. 2d 55 (Ala. 1990).  However, since the Alabama Supreme Court
decided *Home Ins. Co. v. Rice* in 1991, after the certified question was presented, it
appears that the Alabama Supreme Court has answered by finding that the insured is not

Because Progressive undertook the defense of Gracy without reserving its right to deny coverage, prejudice should be presumed, and the lack of proof of actual prejudice will not affect Progressive's duty owed to Gracy.

Next, Defendants argue that Progressive has waived its right to contest coverage because it acted contrary to the notice of its reservation of rights. A non-waiver agreement or a reservation of rights "does not prevent a waiver by subsequent independent acts or statements of insurer through its adjuster or other agent having authority to act." *Bankers Fire & Marine Ins. Co. v. Draper*, 7 So. 2d 299, 301 (Ala. 1942)(citations omitted)(where the parties entered into a non-waiver agreement but the adjuster subsequently contacted Draper, after making a full investigation, and told him that the insurer would pay $650 for the loss, court held that subsequent acts of the insurer constituted a waiver of the non-waiver agreement). Defendants appear to contend that Progressive waived its reservation of rights by subsequently electing to defend Pitts and Gracy without providing notice at the time of undertaking their defense that the defense was being tendered pursuant to a reservation of rights or without explanation. However,

_____

required to demonstrate actual prejudice.

Progressive's initial letter to Pitts provided that "any action this company might take in the future. . . [to] defend a lawsuit" shall not be deemed an admission of coverage and that Progressive expressly reserved all rights of denial under the Policy.  (Defendants' Evidentiary Submissions in Support of Response to Summ. J. Ex. C; Doc. 29 at 34.)  While Progressive did not send notice at the time it tendered a defense that such defense was being provided pursuant to a reservation of rights, this action was not contrary to Progressive's initial notice of its reservation of rights, which clearly stated that Progressive may defend a lawsuit while reserving its rights.  Therefore, Progressive's action of undertaking the defense does not constitute a waiver of its reservation of rights, indicating Progressive has not waived its right to contest coverage.

> 2.    Enhanced Obligation of Good Faith.[16]

---

[16]The enhanced obligation of good faith has been recognized as "both an independent cause of action and, in an equity and declaratory judgment context, an estoppel defense.  Indeed, the [Alabama Supreme Court's] decision in *Twin City Fire*, just one year after *Mitchell Brothers*, finding a cause of action for the enhanced obligation of good faith suggests that it is both." *State Farm Fire & Cas. Co. v. Myrick*, 2008 WL 2020447, at * 3 (M.D. Ala. May 9, 2008)(citing *Twin City Fire Ins. Co. v. Colonial Life & Accident Ins. Co.*, 839 So. 2d 614, 616 (Ala. 2002)).  Under Alabama law, a cause of action for the enhanced obligation of good faith exists as a contract claim.  *Id.* at * 4 (where the Myricks asserted a counterclaim of breach of the enhanced obligation of good faith, and the court found that a breach of the enhanced obligation of good faith could

When an insurer defends an insured under a reservation of rights, potential conflict of interest arises with the insurer. *Ross Neely Sys., Inc. v. Occidental Fire & Cas. Co. of N.C.*, 196 F.3d 1347, 1351 (11th Cir. 1999). Therefore, in defending an insured under a reservation of rights, an insurer "does so under an 'enhanced obligation of good faith.'" *Shelby Steel Fabricators, Inc.*, 569 So. 2d at 312 (quoting *L & S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987)). With regard to the enhanced obligation of good faith for an insurer that elects to defend an insured through attorneys selected by the insurer, the Alabama Supreme Court has stated:

> This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater

---

be asserted as an independent cause of action arising under contract.)

concern for the insurer's monetary interest than for the insured's financial risk.

*L & S Roofing Supply Co.,* 521 So. 2d at 1303 (quoting *Tank v. State Farm Fire & Cas. Co.,* 715 P.2d 1133 (1986))(emphasis omitted);[17] *see also Ross*

---

[17]In addition to the criteria that must be met by the insurer, the attorney appointed by the insurer must also meet specific criteria in order to fulfill its enhanced obligation of good faith. In *L & S Roofing Supply Co.,* the Alabama Supreme Court stated:

> In addition to the above specific criteria to be met by the company, defense counsel retained by insurers to defend insureds under a reservation of rights must meet distinct criteria as well. First, it is evident that such attorneys owe a duty of loyalty to their clients. Rules of Professional Conduct 5.4(c) prohibits a lawyer, employed by a party to represent a third party, from allowing the employer to influence his or her professional judgment. In a reservation-of-rights defense, RPC 5.4(c) demand that counsel understand that he or she represents only the insured, not the company. As stated by the court in *Van Dyke v. White*, 55 Wash.2d 601, 613, 349 P.2d 430 (1960), "[t]he standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated." [See EC5-14, EC5-15, and DR5-105, Code of Professional Responsibility of the Alabama State Bar.]
>
> Second, defense counsel owes a duty of full and ongoing disclosure to the insured. This duty of disclosure has three aspects. First, potential conflicts of interest between insurer and insured must be fully disclosed and resolved in favor of the insured.... Second, all information relevant to the insured's defense, including a realistic and periodic assessment of the insured's chances to win or lose the pending lawsuit, must be communicated to the insured. Finally, all offers of settlement must be disclosed to the insured as those offers are presented. In a reservation-of-rights defense, it is the insured who may pay any judgment or settlement. Therefore, it is the insured who must make the ultimate choice regarding settlement. In order to make an informed decision in this regard, the insured must be fully apprised of all activity involving settlement, whether the settlement offers or rejections come from the injured party or the insurance company.

*L & S Roofing Supply Co.,* 521 So. 2d at 1303-04.

*Neely Sys., Inc.*, 196 F.3d at 1351.  As long as the insurer complies with this criteria, the enhanced obligation of good faith is met and the defense provided by the insurer may proceed under a reservation of rights.  *See L & S Roofing Supply Co.*, 521 So. 2d at 1304. The "obligation now placed on insurance companies is not an onerous one." *Shelby Steel Fabricators, Inc.*, 569 So. 2d at 313.

Here, Defendants argue that Progressive failed to meet its "enhanced obligation of good faith," making it responsible for indemnifying Pitts and Gracy for the claims made against them arising out of the accident.  In order to determine whether Progressive has breached its obligation of good faith, the Court will consider each aspect of the criteria provided for by *L & S Roofing Supply Co.*, 521 So. 2d at 1303.  First, Defendants do not allege nor does the evidence suggest that Progressive failed to fully investigate the incident involving the vehicle of its insured, Pitts, which was driven by Gracy, and Quality Carriers, indicating that Progressive did not breach its duty to conduct an adequate investigation.

---

In addition, Defendants do not allege nor dispute that Progressive neglected to hire competent defense counsel or failed to understand that defense counsel should represent only Pitts and Gracy.  There is no evidence indicating that Holtsford, the attorney hired to defend Pitts and Gracy in the state court action, regarded his client as anyone other than the insured. Therefore, Defendants have not shown a breach of the insurer's duty to hire adequate counsel.

Defendants base their allegations of breach of the enhanced obligation of good faith on the third criteria, contending that Progressive failed to keep Defendants informed as to the status of the investigation regarding coverage and as to the status of the case.  "[T]he company has the responsibility of fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit."  *L & S Roofing Supply Co.*, 521 So. 2d at 1303. With regard to the investigation of the coverage of the claim, Progressive informed Pitts that it reserved its rights to deny coverage and that there was a potential problem with coverage for the loss.  In the May 9, 2006 letter, Progressive advised Pitts that there was a potential coverage issue with

regard to this loss because its records indicated that the 1987 Freightliner Wrecker "is not a listed vehicle" on the Policy.  Also, Progressive's December 18, 2006 letter advised Pitts again that there was a coverage issue because the 1987 Freightliner "is not listed on the policy."  Defendants claim that Progressive did not keep them informed of the status of the investigation. Defendant Pitts even testified that he understood Progressive would investigate the matter and report back to him, claiming that since he had not heard anything further from Progressive in the three months prior to Holtsford taking up his defense, he assumed Progressive's coverage had been resolved and that they realized he was supposed to have liability coverage on the Freightliner. (Pitts Aff. at 5.)  However, Pitts assumption that he was covered with respect to the claim was not supported by any correspondence from Progressive.  In fact, the letters from Progressive in May and December both clearly informed Pitts that the 1987 Freightliner was not a listed vehicle on the Policy and that there was a coverage issue with regard to the claim. In addition, Young, in his June 22 letter, stated that he would keep Thomas R. Jones, Pitts's personal attorney, "informed of any new developments regarding this claim as they occur."  However, based on the evidence, there

were no new developments of which Young or another Progressive representative failed to inform Defendants.  In May, Progressive advised Pitts that the 1987 Freightliner was not a listed vehicle on the Policy, and there is no evidence that anything of substance changed after this letter.   Thus, there is no evidence that Progressive failed to apprise Plaintiff of the status of the investigation.

With respect to the status of the case, "if an insurer intends to defend a case pursuant to a non-waiver agreement or reservation of rights, then that insurer not only must provide notice to its insured of that fact, but also must keep its insured informed of the status of the case."   *Shelby Steel Fabricators, Inc.*, 569 So. 2d at 313.  Here, the case was filed in June, Holtsford appeared in the state court lawsuit in October, and Progressive filed this declaratory judgment suit in December.  Defendants claim that the state court lawsuit was pending for four months before they learned that Progressive had hired lawyers to defend them and that the election to defend came with no notice regarding the progress of the coverage

investigation;[18] however, this fact, without more, is not sufficient to establish a breach of the enhanced obligation of good faith. *Compare Shelby Steel Fabricators, Inc.*, 569 So. 2d at 312 (where U.S.F. & G., which hired a law firm to defend Shelby Steel in an action, had exclusive control over the defense of Shelby Steel and was kept abreast of the status of the lawsuit, but Shelby Steel was never consulted in any way regarding the defense from March 1985 to July 1987, court held that insurer breached its enhanced obligation of good faith when 29 months after undertaking Shelby Steel's defense it denied coverage based on policy exclusions); *Carrier Exp., Inc. v. Home Indem*. 860 F. Supp. 1465, (N.D. Ala. 1994)(where court held that Home failed to meet its duty of keeping the insured apprised of all relevant facts and developments in the case because several crucial pieces of correspondence were never sent by Home to Carrier including a letter stating that counsel was preparing the motion for summary judgment but did not feel that the summary judgment will be successful, that a significant amount

---

[18]Defendants also claim that it was more than two and half months after Progressive undertook the defense of Pitts and Gracy before Progressive reported that the defense was pursuant to a reservation of rights.  However, this issue was addressed with regard to whether Progressive properly notified Defendants that its defense was provided pursuant to a reservation of rights.

of deposition testimony gathered was detrimental to Carrier's position, and that counsel would recommend a $500,000 reserve fund; Home maintained a reserve fun of $6,000, a totally inadequate sum despite Home's knowledge of the tremendous exposure of Carrier and counsel's recommendation; Home did not apprise Carrier of the occurrence or the content of the extensive telephone communications between McDaniel and Bastien; and Home's conduct with respect to the settlement demands was imprudent).

Finally, there is no evidence on the record to suggest that the company engaged in actions which demonstrated greater concern for its own interests than for the interests of its insured.  Thus, there is no issue of material fact as to whether Progressive fulfilled its enhanced obligation of good faith.

For the foregoing reasons, summary judgment is due to be granted in favor of Progressive with respect to its duty to defend or indemnify Pitts since Pitts received sufficient notice of the reservation of rights and there is no evidence that Progressive breached its enhanced duty of good faith; however, Progressive's motion for summary judgment as to the issue that it is entitled to judgment that it has no duty to defend or indemnify Gracy is due to be denied since Gracy never received notice of the reservation of

rights.

V.     Conclusion.

For the reasons stated above, Plaintiff's Motion for Summary Judgment is due to be granted in part and denied in part.  The Court declares that Progressive does have an obligation to defend and indemnify Gracy with respect to claims and the lawsuit arising out of the accident; however, Progressive does not have an obligation to defend or indemnify Pitts.  This conclusion is applicable to all Defendants.  A separate order in conformity with this opinion will be entered.

Done this 29th day of May 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671